## Wilkinson v. Commonwealth Life Insurance Company.

(Decided October 5, 1917.)

### Appeal from Nelson Circuit Court.

Insurance—Life Insurance—Reformation of Policy—Fraud or Mistake—Evidence.—The application for a life insurance policy provided that the policy should not be in force until the policy was delivered and the first premium was paid during the good health of the insured. The policy was dated the day it was issued and provided that subsequent premiums should be payable on the same date in succeeding years. Through no fault of the Company, the policy was not delivered until seventeen days after its date. No misrepresentation as to its provisions was made by the company or the agent who delivered it. The insured examined and accepted the policy and though subsequently notified that the next premium was payable on the date fixed in the policy and that the period of grace would expire after the expiration of one month from that time, retained the policy without objection or asking that it be reformed, until after the policy was forfeited for the nonpayment of the next premium as therein provided. Within thirty days after the expiration of one year from the time the policy was delivered, the beneficiary mailed a check to the company for the premium, which the company declined to accept, unless furnished with satisfactory evidence that the insured was in good health. A few days later the insured died. Held, in an action by the beneficiary to reform the policy and recover thereon, that the mere fact that the policy was dated the day it was issued and the subsequent premiums were made payable on the same date in succeeding years instead of the date of its delivery, was not such evidence of fraud on the part of the company or mutual mistake on the part of the parties as would authorize a court of equity to reform the policy so as to make the defaulted premium payable one year from the delivery of the policy instead of one year from its date, and then adjudge a recovery on the policy.

FRANK E. DAUGHERTY, E. N. FULTON and JOHN A. FULTON for appellant.

R. C. CHERRY and KELLEY & KELLEY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On September 30, 1914, the Commonwealth Life Insurance Company issued to Joseph M. Wilkinson, a policy insuring his life in favor of his wife, Bessie W. Wilkinson, in the sum of $5,000.00. Her husband died on December 10, 1915, and she brought this suit against the

company to reform the policy on the ground of mutual mistake of the parties, or fraud on the part of the company, and to recover on the policy when thus reformed. On final hearing the action was dismissed, and she appeals.

The facts are as follows: The written application for the policy was dated September 15, 1914. The insured was examined September 19, 1914, but the report thereof was not forwarded to the company until several days later. The application was accepted and the policy issued and dated on September 30, 1914. The policy was then sent to the soliciting agent at New Hope, in Nelson county, for the purpose of delivery to the insured, who lived at Bloomfield, in the same county. Before the policy reached the soliciting agent, he was adjudged of unsound mind and sent to the state hospital, and in a short time the policy was returned by the Postoffice Department to the home office of the company at Louisville. The policy was then sent with other policies in care of a special agent, for delivery. While at Bloomfield on October 15th, for the purpose of delivering this policy, the special agent met G. R. Elder, who informed him that he had assisted the soliciting agent in securing the policy, and that the policy should be turned over to him for delivery. The special agent then delivered the policy to Elder, who gave him a check for the premium, less the agent's commission, with the understanding that he would see the insured on Saturday, October 17th, and if he refused to accept the policy, the check which Elder gave was to be returned. On Saturday, October 17th, Elder gave the policy to Wilkinson, who examined it and deposited it in a box at the Citizens Bank, where it remained until his death. On Monday, October 25, 1915, the insured was taken ill and was carried to the Jewish Hospital in Louisville, where an operation was performed upon him. His wife accompanied him to the hospital, but found it necessary to return to her home on November 6, 1915. On examining her husband's papers on Tuesday, November 9th, she found the formal notice from the company of the maturity of the second premium on the policy. She called up the local agent, G. R. Elder, and asked his advice. Elder agreed to meet her at the hospital on November 10th, where she gave him a letter, with a check to the insurance company and requested him to mail it for her, which he did on his return to Bloomfield that night.

The check not only included the amount of the premium, $78.65, for the ensuing year, but also the estimated interest during the period of grace. On November 17, 1914, the company wrote the insured at Bloomfield, that in view of the fact that the period of grace had expired, it would be necessary for him to furnish evidence of his good health, in order to authorize a reinstatement of the policy, and that the check would be held and not cashed, until the necessary evidence was furnished. On November 24, 1915, the company wrote, that not having received the necessary proof of the insured's good health, it returned the check, but on furnishing the necessary proof, the check might be sent to the company, and then would be received in settlement of the premium for the ensuing year. It further appears that prior to August 20, 1915, notice that the second annual premium would be due on September 30, 1915, was sent to the insured at Bloomfield, Ky. The premium not then being paid, a second notice was sent during the first week in October, 1915. Both of these notices were received by the insured. On October 26th, the secretary of the company wrote a letter to the insured advising him that the grace period of thirty days allowed for the payment of his premium would expire on October 30th, and suggesting that if inconvenient to pay the full premium, he might send a check for $19.67, and execute three notes in favor of the company for $19.66 each, which notes were enclosed. The letter and notes are made part of the deposition of the appellant. No response to either of these notices was made to the company.

The application which was signed by Joseph M. Wilkinson, contained the following provision:

"I also declare that it is understood on behalf of myself and any beneficiary under any policy issued by the said Company, on my life upon this application, that the Company shall not be liable until the application has been received, approved, the policy issued thereon by the Company and delivered to me and premium paid during my good health."

The application called for a twenty-year term policy and provided that the premium of $78.65, should be paid annually. The policy issued pursuant to the application, is what is commonly called a convertible twenty-year term policy. On the face of the policy is the following provision:

"This contract is made in consideration of the application for this policy hereby made a part thereof and the payment of the first premium of $78.65 and the payment of a like-amount at the home office of the Company on or before the 30th DAY OF SEPTEMBER OF EACH YEAR for the term of twenty years or until the prior death of the insured."

It is further stated in the face of the policy "that the benefits and provisions stated on the second page thereof form a part of this contract as fully as if recited at length over the signature hereto affixed."

Under the head of "Benefits and Provisions" is the following:

"Should this policy lapse by non-payment of premium, it may be reinstated at any time upon satisfactory evidence of insurability and the payment of past due premium with five per cent. interest thereon, and should the Company require it, any other indebtedness of the insured to the Company."

With reference to "grace" in the payment of premiums, we find the following:

"In case of default in the payment of any premium when due, this policy will be continued in force for the full amount for one month, subject to a charge for interest at the rate of five per cent. per annum, and payment of premium may be made during that time without evidence of insurability."

Under the head of "Payment of Premiums" is the following provision:

"The first premium must be paid during the lifetime and good health of the insured and upon delivery of this policy. All premiums are due and payable annually in advance, but they may be paid in semi-annual or quarterly installments, at the Home Office of the Company in the City of Louisville, Ky., or they may be paid elsewhere to authorized agents on or before the DATES WHEN DUE, in exchange for receipts signed by the President, Vice President, Secretary or Treasurer, and countersigned by such agent. If any premium, or note given therefor, be not paid when due, this policy shall become null and void."

It will be observed that the check for the second premium was sent to the company on November 10, 1915. If that premium was due September 30, 1915, then the payment was not within the one month's grace provided by the policy. On the other hand, if the second premium

was not due until October 17, 1917, then the payment was made within one month from that date, and was therefore in time.

After setting out the foregoing provisions of the application, and certain provisions of the policy, the petition alleges, in substance, that among other things in the application, it was provided that should any contract or policy issue thereon, it should not become effective until the payment of the first premium and the delivery of the policy to the insured while he was in good health, and thereupon the policy became effective and the subsequent premiums were payable annually in advance, at the beginning of each year of insurance, or within one month thereafter, with 5 per cent. annual interest thereon from the time when due. It is further alleged that at the time of the delivery of the policy and the payment of the first annual premium on October 17, 1914, "either by the fraud of the defendant or by the mistake of said insured and the defendant, said policy of insurance was erroneously dated as being issued, signed and delivered on the 30th day of September, 1914, whereas in fact said policy was not delivered and the first annual premium paid thereon until October 17, 1914, and the correct and true date when each of said annual premiums became due and payable was October 17 of each year and not September 30 each year, as erroneously stated in said policy and by the terms of said contract the insured had only one month after the 17th of each October in each year for the payment of said annual premium of $78.65 with 5% interest thereon from the time when due."

There was no direct evidence of actual fraud or mutual mistake on the part of the parties, but it is insisted for the appellant, that where the application for a term policy stipulated that the liability of the company shall not begin until the policy is delivered and paid for during the good health of the insured, it is such character of constructive fraud or inequitable conduct or gross mistake, for the company to ante-date such policy by seventeen days before delivery, and thus make the subsequent annual premiums payable seventeen days earlier each year, as will authorize a court of equity after loss to reform such policy, both as to the date thereof and the erroneous date specified for payment of subsequent annual premiums, and then enforce payment of the policy

This is not a case where the company agreed to insure the applicant for a period of thirteen months, and the soliciting agent, without authority from the insured, requested the company to date the policy six days before its delivery and then stated to the insured at the time of the delivery of the policy, that the policy conformed to the agreement between him and the company. In such a case, it was held that the policy should not have borne the unauthorized date requested by the agent, without the knowledge of the insured, but should in accordance with the general practice in such matters, have been dated the day of its issue and the subsequent premiums have been made payable on the same day in each succeeding year. It was also held that the omission of the insured to read the policy when delivered, was not such negligence as would estop him from denying that the policy conformed to the agreement between him and the company, in view of the fact that the agent at its time of delivery assured him that the policy did conform to such agreement. Under these circumstances the court concluded that the insured was entitled to insurance for a period of thirteen months from the date of the issue of the policy and, as his death occurred within that period, his administrator was permitted to recover. McMaster v. New York Life Insurance Co., 183 U. S. 25, 46 L. Ed. 64.

Nor does the case fall within the rule announced in the case of Cecil v. Kentucky Livestock Insurance Co., 165 Ky. 211. There Cecil applied for insurance on a stallion named Great Ward. The application was signed on March 26, 1913. It reached the company on March 29. The policy was issued on the 29th, but it was antedated to March 26th, the date of the application. It was delivered to Cecil on April 1st and the premium was then paid. On March 27, 1914, the stallion died. The company having denied that the policy was in force when the stallion died, Cecil brought suit to recover on the policy. The petition alleged that Cecil made application to the defendant to insure him against loss by the death of his horse, for a period of one year; that it was agreed between the parties that the application was to become a part of the contract of insurance in the event the application was accepted; that the contract of insurance should not be in force until the policy should be delivered to Cecil and the premium paid for one year's insurance during the life and good health of "Great

Ward"; that the application was accepted on March 29, 1913, and the policy executed on that day, but was dated on March 26, 1913, and was subsequently delivered to Cecil on April 1, 1913, when the premium was paid. The petition further alleged that by the terms of said contract, the company's liability did not commence until delivery of the policy to Cecil, and the payment of the premium by him on April 1, 1913; but, by mutual mistake and oversight of the parties, it was made to read to insure said horse from March 26, 1913, at noon, to March 26, 1914, noon, when, according to the contract the policy should have been written to insure appellant against loss from the 1st day of April, 1913, noon, to the 1st day of April, 1914, noon. In other words, the petition not only set forth the agreement actually made by the parties, that is, to insure the horse from April 1, 1913, to April 1, 1914, but clearly alleged that by mutual mistake of the parties, the policy was made to insure the horse from March 26, 1913, to March 26, 1914, instead of from April 1, 1913, to April 1, 1914, as provided by the original agreement between the parties. Under these circumstances, this court held the petition good on demurrer. In the case under consideration, there is neither pleading nor proof to the effect that the parties made any other agreement than that set forth in the contract of insurance.

It is clear from the proof in this case, that the policy was not ante-dated at all. In accordance with the common practice of insurance companies, it was dated the day it was issued, and subsequent annual premiums were made payable on the same day in the succeeding years. Ordinarily, only a few days elapse between the date a policy is issued and the date it is delivered. In this case the delay in the delivery of the policy grew out of the fact that the soliciting agent to whom it was sent became insane, and was not due to any fault on the part of the company. When the policy was delivered, no representation was made to the insured that would tend in the least to mislead him as to the time the subsequent premiums would become due. The policy provided that they should become due on September 30th in each year. Whether the insured observed this fact or not, we cannot say. He did examine the policy and accept it as the contract between him and the company. Even if there then existed any substantial reason why he should not have ascertained the date of payment of subsequent pre-

miums, this reason no longer existed when he received in the month of August a notice that the second annual premium would be due on September 30, 1915, and a second notice during the first week in October, and also the letter on October 26th, advising him that the period of grace would expire on October 30th. Notwithstanding these facts, he made no claim of fraud or mistake in the policy as to the time when the premiums were due and payable. He asked for no change and none was made. Indeed, the claim of fraud or mistake now made, is based entirely on the fact that, as the insured paid for one year's insurance and as the policy was not delivered and did not become effective until October 17th, seventeen days after its date, subsequent premiums should have been made payable on October 17th in succeeding years, and not on the date the policy was issued. To uphold this contention would result in the making of a contract which the parties themselves did not make. While it is true that policies of insurance generally provide that they shall not take effect until the payment of the first premium and their delivery during the good health of the insured, yet, as before stated, it is the common practice of insurance companies to date policies on the day they are issued, and the mere fact that there is always a time between the issuance of a policy and its delivery, during which it is provided that no liability shall attach, is not such evidence of fraud or mistake as will authorize the court to change the time and terms of payment expressly provided in the policy itself. On the contrary, the beneficiary will stand in the shoes of the insured and will be held bound by the terms of the policy which the company issued and the insured accepted and retained without objecting or asking that it be reformed, until the policy was forfeited by the non-payment of premiums on the dates fixed by the policy. This view of the question is supported by the great weight of authority. Snydor v. Met. Life Ins. Co., 26 Pa. Supt. Ct. Rep. 521; Tibbitts v. Mutual Benefit Life Ins. Co., 159 Ind. 671; Jewett v. N. W. National Life Ins. Co., 149 Mich. 79; Methvin v. Ins. Co., 129 Cal. 251; Wilkie v. N. Y. Mutual Life Ins. Co., 146 N. C. 520; Trigg v. Register Life and Annuity Ins. Co. of Iowa, 152 Ia. 720. 133 N. W. 322; Rose v. Mutual Life Ins. Co., 240 Ill. 45, 88 N. E. 204. It follows that plaintiff's petition was properly dismissed.

Judgment affirmed.