# Richmond

Virginia Weinstein, Et Al. v. Glens Falls Insurance Company.

Glens Falls Insurance Company v. Virginia Weinstein, Et Al.

April 24, 1961.

Record Nos. 5112, 5242.

Present, All the Justices.

The opinion states the case.

*Herbert K. Bangel* (*A. A. Bangel; Bangel, Bangel and Bangel,* on brief), for plaintiffs in error, Virginia Weinstein, Et Al.

*Berryman Green, IV* (*Breeden, Howard and MacMillan,* on brief), for defendant in error, Glens Falls Insurance Company.

*Berryman Green, IV* (*Breeden, Howard and MacMillan,* on brief), for appellant, Glens Falls Insurance Company.

*Herbert K. Bangel* (*A. A. Bangel; Bangel, Bangel and Bangel,* on brief), for appellees, Virginia Weinstein, Et Al.

WHITTLE, J., delivered the opinion of the court.

This litigation involving a claim for loss under a fire insurance policy began as an action at law (Record 5112) and ended as a suit in equity (Record 5242). In the latter suit a decree was entered in favor of the property owners, Virginia Weinstein and Freda Rothenberg, granting them judgment against Glens Falls Insurance Company in the sum of $2,500.

The property owners will be referred to as the plaintiffs and the insurance company will be referred to as the company.

By agreement the cases were combined and argued together on appeal.

### The Action At Law—Record 5112

Plaintiffs filed their motion for judgment against the company to recover under Fire Insurance Policy No. 2115, issued by the company. They alleged that on the 12th day of November, 1955, the policy was issued for a three year term and provided that the company would pay plaintiffs for loss or damage by fire to the amount

of $2,500, on property No. 926 Seventh Street, Portsmouth; that on the 11th day of February 1958, while the policy was in force and effect, the property was destroyed by fire; that due proof of loss was filed with the company and demand was made for payment which was refused.

The company filed grounds of defense in which it admitted issuing the policy, contending, however, that the policy covered a mercantile establishment rather than a dwelling and was therefore subject to a clause in the policy which provided that the premises would not be covered by any policy "for a loss occurring while the described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of ninety consecutive days, which permitted period includes the sixty consecutive days allowed in the printed condition of the policy," and that said premises, unknown to the company, were vacant for a period of time in excess of that permitted.

After the plaintiffs rested their case, the court, on motion, struck the evidence on the ground that plaintiffs could not maintain the action at law, stating in its opinion that "the plaintiff will be left to such remedy as he has in chancery if he can establish that he has been hurt by a mistake of the defendant's agent." The evidence having been stricken, the jury returned a verdict for the company, on which, over the objection and exception of the plaintiffs, the court entered judgment, to which ruling we granted plaintiffs a writ of error.

The facts developed in the law action, which are also pertinent to the suit in equity, show that plaintiffs, in the late 1940's purchased the property here involved, which property was sold by plaintiffs to Melvin Swain, Henry Rhodes, Ivan Horton, John Moody and Samuel Overton, Jr., with the deferred payment evidenced by a note secured by a deed of trust.

On November 12, 1955, the company issued, by and through its authorized agent, Fred G. Enos, a fire policy covering the building in the amount of $2,500 for a three-year period; said policy expiring on the 12th day of November, 1958. On November 12, 1955, the agent delivered to plaintiffs a paper writing which they believed to be a policy of insurance, but which was in fact a written memorandum that the fire insurance policy had been issued. This memorandum designated Swain and his co-owners as the insured, with the loss payable to Leonard G. Karp, Trustee.

The memorandum showed the effective date of the insurance and the expiration date; the amount of insurance; the rate and premium paid; a description of the property; and a recitation that the company insured the named insured and their legal representatives to the extent of the actual cash value of the property at the time of the loss, not exceeding the amount specified.

The policy of insurance was never delivered to plaintiffs and was not available for introduction in evidence.

Plaintiffs observed from the memorandum that the policy erroneously described the building as a "two-story frame, approved roof, building occupied as a grocery store, situated No. 926–7th Street, Portsmouth, Virginia," and called this error to the attention of the company's agent. Whereupon the agent issued a rider and delivered the same to the plaintiffs, again incorrectly describing the building as a "dwelling-grocery store." Plaintiffs again directed the agent's attention to the error in the description and the agent issued a rider on December 6, 1955, correctly describing the building as a "dwelling".

Thereafter Swain and his co-owners defaulted in the payment of the debt and the trustee, being directed so to do, made sale of the property in accordance with the terms of the deed of trust. At the sale Fred G. Enos (agent of the company), acting as auctioneer, cried off the property and the plaintiffs being the highest bidders, became the purchasers and again the fee simple owners thereof.

Whereupon plaintiffs directed the company to issue the policy covering the premises against loss by fire in the same amount, and the company, acting by and through its agent (Enos) delivered to plaintiffs a rider on July 24, 1957, naming plaintiffs as the insured, eliminating the trustee's interest clause, and again describing the property insured as a "dwelling."

On February 11, 1958, when the building was destroyed by fire, the policy was in full force and effect, and due proof of loss was subsequently filed by plaintiffs with the company. It was shown that the building had a fair market value of $4,000. Demand for payment was made several times and refused.

Whereupon plaintiffs brought the action at law. It is disclosed that the plaintiffs requested of company's agent a copy of the policy which the agent did not deliver. Thereupon, plaintiffs offered to prove by Julian M. Blachman, a licensed insurance agent for thirty-odd years, the standard form of fire policy authorized by the Virginia

Code to be issued on a dwelling. The court refused to allow this proof, and to make up the record the plaintiffs offered the evidence of Blachman in the court's chambers, by which it was shown that the standard form of fire insurance policy issued on a dwelling provided that "permission granted * * * to be unoccupied or vacant without limit of time." The court rejected this proof and the plaintiffs excepted to the court's ruling.

On appeal plaintiffs contend:

"1. The court erred in holding that the plaintiffs could not maintain their claim in an action at law, but were required to resort to a court of equity.

"2. The court erred in refusing to allow the plaintiffs to prove the contents of a standard fire insurance policy in Virginia on a dwelling."

The real issue in the case was whether the insured building was a mercantile structure or a dwelling. If determined to be mercantile then the 90-day vacancy or unoccupancy provision would come into play. And if it be proved that the building had been vacant or unoccupied for a period of 90 days, under the terms of the policy the insurance would have been voided. On the other hand, had it been proved that the structure was a dwelling, as described in the two riders to the policy, the vacancy provision would not have applied and the insurance would have been in full force and effect.

The policy on which the suit was predicated, which the company admitted issuing, concededly had to conform to the provisions of the standard fire policy prescribed by the Code of Virginia, and the riders issued by the company on the policy, which riders were in the hands of the plaintiffs upon the trial of the case, designated the property as a "dwelling".

Since we are of the opinion that the correct result was ultimately reached in the equity suit it is not necessary for us to decide whether or not the court erred in its ruling in the action at law.

*Suit In Equity—Record 5242*

In passing on the company's motion to strike the evidence in the law action the court said (to plaintiffs): "You couldn't sue on the memorandum. You have to sue on the entire contract, and you have to sue on the contract as it stands. If the paper doesn't express the actual agreement of the parties, you have got to reform in chancery." Whereupon, on May 5, 1959, plaintiffs filed their bill in equity seeking the reformation of the insurance contract, to which the

company answered generally, and in addition filed a special plea asserting:

1.   That all matters in issue had been "adjudicated or properly might have been adjudicated between the parties" in the action at law and therefore the issues raised by the bill of complaint are *res judicata.*

2.   That the plaintiffs are estopped by the judgment in the action at law to prosecute this suit.

3.   That plaintiffs are further estopped from asserting their rights as the matters set forth in the motion for judgment "are inconsistent with the allegations of the bill of complaint filed in this cause."

In the answer filed by the company it was admitted that Policy No. 2115 was duly issued. It was asserted however that the insured building was a mercantile establishment and was therefore subject to the 90-day vacancy or unoccupancy clause in the policy which the company alleged had been violated.

In addition to the pleadings the company moved that the suit in equity be stayed pending "a final determination by the Supreme Court of Appeals of Virginia in the action at law" (Record 5112), which motion the court overruled and, at the suggestion of the company, decreed that the record in the action at law "be and the same hereby is made part of the evidence in this cause."

In the same decree it was adjudicated "that the matters set forth in the bill of complaint are not *res adjudicata* between the parties hereto, and that the plaintiffs are not barred by any election or estoppel from prosecuting the causes of action set forth in the bill of complaint," thus overruling the special plea.

The remaining issue in the case was whether the insured building was a mercantile establishment and therefore subject to the 90-day vacancy or unoccupancy clause which the company alleged had been violated, or whether the building was a dwelling, not subject to the 90-day vacancy provision.

To determine this question the court ordered an issue out of chancery, submitting the question to a jury. Evidence was heard on the issue and the jury returned its advisory verdict as follows: "We, the jury, find that the building located at 926—7th Street was a dwelling on November 12, 1955."

Motion was made to set aside the verdict as contrary to the law and the evidence or that the court disregard such finding for the same reason, which motion was overruled. Whereupon, over the objec-

tion of the company, judgment was entered for plaintiffs in the sum of $2,500. We granted the company an appeal.

The assignments of error relied on present several questions which will be treated in their order.

█ It is first contended that the chancellor erred "in holding that the complainants were not barred by an election of remedies and estoppel" from maintaining their cause for reformation on the policy after they had prosecuted the action at law.

The answer to this is that the judgment in the law case did not determine the case on its merits. The effect of the chancellor's ruling was that it was necessary for the plaintiffs to go on the chancery side of the court in order to seek reformation of the policy which the chancellor held they could not do on the law side. There was no finding that the plaintiffs were not entitled to recover on the merits of their claim. The pursuit of a supposed but non-existent remedy does not constitute an election. See Anno. 49 A.L.R. 1514; *Davis* v. *Terry*, 114 N.C. 27, 18 S. E. 947.

In fact the court ruled at the instance of the company that the law action could not be maintained, thus negating any idea that the election of remedies, as now contended by the company, would estop the chancery suit for reformation.

█ The company next says that the court erred in overruling its motion to strike the evidence. This deals with the court's acquiescence in the verdict of the jury on the issue out of chancery. A verdict on an issue out of chancery is merely advisory. The chancellor is not bound by it. After the verdict is in, the chancellor determines whether or not he will follow the finding of the jury.

Suffice it to say that the record discloses ample evidence to show that the building, 926 Seventh Street, was a dwelling and not a mercantile establishment. The jury was warranted in so finding, and the chancellor was warranted in following the finding of the jury and in treating the policy as reformed.

█ The third point relied on by the company is that the court erred in refusing to give Instruction No. 3 which would have told the jury that it should apply the standards of the Virginia Insurance Rating Bureau in determining whether or not the building was a dwelling.

In this connection the company introduced Donald C. Avery of the Virginia Insurance Rating Bureau for the purpose of proving that the bureau had assigned to the building in question a "mercantile

and dwelling" classification. On cross-examination Avery testified:

"Q. You never have seen this particular piece of property, to your knowledge?

"A. I can't remember ever seeing it.

\* \* \* \* \* \* \*

"Q. When a person has a dwelling and it appears on your rating that it's a store, and the policy comes through your bureau, don't you send a man out there to look and see whether it's a dwelling or see whether it's a store?

"A. That we do.

"Q. Is there anything in your file to indicate that you-all went out to look at this building after you-all had received this form or the policy showing it to be a dwelling?

"A. No."

As we conceive the issue, it was a factual matter as to whether the insured property was a dwelling or a mercantile establishment. It does not take an expert or an agent of a rating bureau to determine this question. Any person with average intelligence could examine a building and make the determination. Instruction No. 3 was properly refused.

■ The company finally says that the plaintiffs' suit for reformation was barred by the contractual limitation on the policy of insurance and that the court erred in not so holding.

The company contends that the policy conforms to Code, § 38.1-366, which provides:

"§ 38.1-366. \* \* \*

"SUIT.—No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss."

It is argued that as the loss occurred on February 11, 1958, and the suit for reformation was not filed until May 5, 1959, the suit was barred by this section.

With this we do not agree. The record discloses that before the law action was terminated on July 7, 1959, the plaintiffs, at the suggestion of the court, filed their bill for reformation of the policy on May 5, 1959.

We hold that the chancery suit was but a continuation of the claim asserted in the law action which was concededly brought in

time, and the statute having stopped running upon the institution of the law action, the suit in chancery was not barred.

As stated in 46 C.J.S., Insurance, § 1260, page 278:

"* * * (T)he contract limitation is satisfied if an action is brought within the limited period in good faith, and on its dismissal a new action is promptly instituted, although the second action is not brought until the time has expired; and that if the dismissal or non-suit occurs without the authority or the fault of insured, and is due to some fault on the part of insurer, a second action may be maintained. So if by reason of mistake in the execution of the policy it is necessary to have it reformed in equity, and the necessity of such reformation is not discovered until after the bringing of an action at law, the action in equity may be regarded as ancillary to, or a continuation of, the first action and will not be barred if the first action was brought in time."

See also 26 C.J., page 480, note 26; *Southern Feed Stores* v. *Great American Indemnity Co.*, 182 Ga. 442, 185 S. E. 723, 725; *Robert I. Buchholz* v. *United States Fire Insurance Co.*, 294 N. Y. 807, 62 N.E. 2d 239; 29 Am. Jur., Insurance, § 356, page 716; 34 Am. Jur., Limitation of Actions, § 266, pp. 218, 219, note 1.

We see no error in the decree appealed from and it is

*Affirmed.*