**Donald L. ATKINS, Appellant,**

v.

**SCHMUTZ MANUFACTURING COMPANY, Incorporated, Appellee.**

**No. 11566.**

United States Court of Appeals,
Fourth Circuit.

Dec. 10, 1970.

James A. Eichner, Richmond, Va. (George E. Allen, Jr., and Allen, Allen, Allen & Allen, Richmond, Va., on brief), for appellant.

Frank O. Meade, Danville, Va. (Meade, Tate & Meade, Danville, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF, BOREMAN, BRYAN, WINTER, CRAVEN and BUTZNER, Circuit Judges sitting en banc on resubmission.

HAYNSWORTH, Chief Judge:

When this troublesome case first came before this court, a divided panel upheld its summary dismissal on the ground that its maintenance was barred by Virginia's statute of limitation. Treating the law of Virginia as controlling, a majority of the panel held that the running of the statute was not tolled by the filing and pendency of a previous action in the Western District of Kentucky.[1]

Subsequent reconsideration by the court *en banc* resulted in a conclusion by a majority of a divided court that equitable considerations partially foreclosed assertion of the bar of the statute.[2] There followed a petition for further reconsideration and a conclusion by the members of the court that proper disposition of the appeal required treatment by the full court of the initial issue.

We conclude that the tolling effect of the pendency of an identical suit in another federal court is to be determined as a matter of federal, rather than state, law and that the Virginia

---

1. Atkins v. Schmutz Manufacturing Company, 4 Cir., 401 F.2d 731.

2. These opinions have not been published, and are withdrawn.

statute of limitations was tolled by the action brought by Atkins in the Western District of Kentucky. Our conclusion rests principally upon a consideration of the unitary nature of the federal court system. It draws strong support from the fact that in the analogous situation of transfers from one district court to another, after the period of limitation has run, we look to federal law to reach the conclusion that the pendency of the action in the transferor district tolls the running of the statute. By whatever procedural means prosecution of the claim is transferred from one district court to another, the tolling effect of the action in the first district should be determined under the same body of law.

The plaintiff, Atkins, a resident of Virginia, was severely injured while working for his employer in Virginia when his feet were caught in a machine manufactured by the defendant, Schmutz Manufacturing Company. He alleges that the accident was caused by design and construction defects in the machine. Schmutz is a Kentucky corporation with its sole place of business in that state.

At the time of the accident, Virginia had no long-arm statute, and Atkins' counsel reasonably concluded that personal jurisdiction of Schmutz could not be obtained in Virginia. Consequently, he filed a personal injury action in the United States District Court for the Western District of Kentucky, where Schmutz had its principal place of business. That action was commenced within Virginia's two-year period of limitation for tort actions, but not within Kentucky's one year period of limitation. Extensive discovery and other pre-trial proceedings followed, for everyone reasonably assumed that the applicable limitation period was that of Virginia (the state where the cause of action arose) and not that of Kentucky (the forum state).[3] That assumption was sharply upset, however, when the Kentucky Court of Appeals held that Kentucky's limitation period was applicable in actions brought in the courts of that state if the limitation period of the state where the cause of action arose was longer.[4]

Applying Kentucky's new rule, the District Court for the Western District of Kentucky dismissed the action as time-barred. The Sixth Circuit affirmed,[5] considering itself bound to follow Kentucky's choice of law[6] and thus to apply Kentucky's one year period of limitation,[7] and to do it even in cases previously filed in reliance upon Kentucky's earlier choice of law rule.[8] The Supreme Court denied a writ of certiorari.[9]

In the meantime, Virginia had enacted a long-arm statute under which plaintiff believed personal jurisdiction of the defendant could be obtained in Virginia.[10] Before the Sixth Circuit's mandate became final, this action was commenced in the Western District of Virginia. Dismissal followed upon the ground that Virginia's two year limitation period had run before this action was filed and

---

3. In the Sixth Circuit this was the settled construction of Kentucky law. Collins v. Clayton & Lambert Manufacturing Co., 6 Cir., 299 F.2d 362, 364; Koeppe v. Great Atlantic & Pacific Tea Co., 6 Cir., 250 F.2d 270; Burton v. Miller, 6 Cir., 185 F.2d 817.

4. Seat v. Eastern Greyhound Lines, Inc., Ky., 389 S.W.2d 908. The decision expressly overruled the earlier decisions of the Kentucky Court of Appeals which had been the basis of the Sixth Circuit's reading of Kentucky law.

5. Atkins v. Schmutz Manufacturing Company, 6 Cir., 372 F.2d 762.

6. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

7. Guaranty Trust Company v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079.

8. Wetherington v. Griggs, Ky., 392 S.W. 2d 56.

9. 389 U.S. 829, 88 S.Ct. 92, 19 L.Ed.2d 86.

10. Va.Code Ann. §§ 8–81.1 through 8–81.5. These provisions were enacted in 1964.

was untolled by the proceedings in the federal courts in the Sixth Circuit.[11]

■ In this diversity case, Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, compels adoption of the requirement, applicable in the state courts of Virginia, that actions for personal injuries "be brought within two years next after the right to bring the same shall have accrued."[12] Atkins' action against Schmutz accrued when he was injured, Caudill v. Wise Rambler, Inc., 210 Va. 11, 168 S.E.2d 257, and he brought an action within two years of that date. But that action was terminated without any decision on the merits, and Schmutz, relying on its interpretation of Virginia law, asserts that its pendency had no tolling effect.

If, in determining the tolling effect of the pendency of the action in the federal courts of Kentucky, we were required, as we are in determining the applicable period of limitation, to follow the state law of Virginia, it is possible, although not certain, that we would uphold the time-bar. Few cases involving the tolling effect of prior actions have been decided by the Virginia Supreme Court of Appeals, but in a case decided in 1938, Jones v. Morris Plan Bank of Portsmouth, 170 Va. 88, 195 S.E. 525, that court dealt with a situation somewhat similar to the one before us.

The plaintiff in *Jones* had filed an action against the defendant in the Circuit Court of the City of Suffolk to recover damages for alleged malicious abuse of civil process. Fourteen months later, it was dismissed "for lack of proper venue duly pleaded."[13] Later, Jones asserted the same cause of action against the same defendant in the Circuit Court of the City of Portsmouth. By then, the two year period of limitation had run, unless its running was interrupted by the pendency of the action in the Circuit Court of the City of Suffolk. Construing § 5826 of the Virginia Code (now § 8–34), the Virginia Supreme Court of Appeals found no basis for granting relief to a plaintiff whose prior suit was brought in the wrong forum or was dismissed otherwise than upon the merits.[14]

We cannot be confident, however, that the result in *Jones* would necessarily compel the Virginia Supreme Court of Appeals to reach the same result if it were called upon to decide the case before us. Some indication that it might not may be found in the more recent case of Weinstein v. Glens Falls Insurance Co., 202 Va. 722, 119 S.E.2d 497. An action was brought within the one year period of limitation to recover on a policy of insurance. During its pendency it was discovered that recovery was unavailable unless the policy were reformed. Reformation could be accomplished only by bringing a separate suit in equity. The equity suit was brought in the same court before dismissal of the law action but more than one year after the loss occurred. The Virginia Supreme Court of Appeals rejected the company's contention that the statute barred the institution of the reformation suit, holding that, as a matter of judicial treatment, the newly filed suit in

11. 268 F.Supp. 406.

12. Va.Code Ann. § 8–24.

13. 195 S.E. 525.

14. "An analysis of our statute (section 5826) shows that in only four instances is there a suspension of the statute of limitations by reason of the pendency of a former suit brought in due time. These are: (1) Where such suit abates 'by the return of no inhabitant,' that is, where the writ is not served for that reason; (2) where the suit abates by reason of the 'death or marriage' of a party; (3) where, after the plaintiff has obtained a judgment or decree in his favor, it is 'arrested or reversed upon a ground which does not preclude a new action or suit for the same cause'; and (4) where 'there be occasion to bring a new action or suit by reason of the loss or destruction of any of the papers or records in a former suit or action which was in due time.'

"None of these provisions applies to the plaintiff's case. There is no saving provision where a suit, such as that of the plaintiff here, was brought in the wrong forum or was dismissed otherwise than upon the merits." 195 S.E. 526.

equity was a continuation of the earlier action at law. There was no reference to the tolling statute, which would not have saved the case.

Virginia's Supreme Court of Appeals has recently indicated its reluctance in deciding statute of limitation questions to reach results which are unjust and inequitable. Caudill v. Wise Rambler, Inc., *supra*. Clearly it would be unjust and inequitable in the circumstances of this case not to give a tolling effect to the prior action. Enforcement of the time-bar here would serve none of the underlying purposes of the statute of limitation and equitable considerations, absent in the *Jones* case, cry for mitigation of the statute's harshness.

Atkins has been diligent and without fault in his efforts to prosecute his claim against Schmutz. His belief that the Western District of Kentucky was the correct forum for litigating the merits of his claim and his belief that he had two years in which to commence his action were entirely reasonable and consistent with established precedents in Kentucky and in the Sixth Circuit.

Nothing Atkins has done or failed to do has prejudiced in any way Schmutz's ability to defend this suit on the merits. This is not a case where a time lapse between the end of one suit and the commencement of another might cause the defendant to think that the litigation has come to an end. From the initial filing of the complaint in the District Court in Kentucky, these parties have been continual adversaries before one federal tribunal or another pressing their respective claims. More importantly, Atkins asserted his claim in a court of competent jurisdiction within the period prescribed by Virginia and both parties prepared for litigation on the merits.[15] Allowing Atkins to litigate the merits of his claim would not frustrate the oft-stated purpose of statutes of limitation to compel the assertion of a right of action promptly while the evidence is available and still relatively fresh.[16] Allowing Atkins to litigate the merits of his claim at this time would be consistent with the basic purpose reflected in the tolling rule—saving the right of action for plaintiffs who, without fault, have been unable to obtain an adjudication on the merits.

This, then, is a case where the parties have obtained the full protection the

15. Extensive discovery, resulting in the recording and preservation of evidence, was undertaken by both parties after Atkins filed his suit in the Kentucky District Court. In addition, Atkins was hospitalized for an extended period at the expense, and under the general supervision, of the defendant's liability insurance carrier, which was also the workmen's compensation insurance carrier for Atkins' employer. The insurance carrier, which is defending Schmutz, has had an intimate acquaintance with the claim and the nature and extent of the plaintiff's injuries from a date shortly after the accident.

16. "Statutes of limitation are statutes of repose, the object of which is to compel the exercise of a right of action within a reasonable time. They are designed to suppress fraudulent and stale claims from being asserted after a great lapse of time, to the surprise of the parties, when the evidence may be lost, the facts may have become obscure because of defective memory, or the witnesses have died or disappeared." Street v. Consumers Mining Corp., 185 Va. 561, 575, 39 S.E.2d 271, 277.

"Statutes of limitation are primarily designed to assure fairness to defendants. Such statutes 'promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.' Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348–349, 64 S.Ct. 582, 586, 88 L.Ed. 788. Moreover, the courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights." Burnett v. New York Central R. Co., 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941.

statute of limitation was designed to afford, and they have obtained it in the precise manner required by the statute —institution of a suit within the prescribed period. Given these considerations, one may doubt whether the Virginia Supreme Court of Appeals would mechanistically follow *Jones* and deny Atkins his day in court.

There is, however, a fundamental and, we think, critical difference between the situation in *Jones* and this case—the nature of the judicial systems involved. *Jones,* and the statutory provision under which it was decided, may be accepted as declarations of the law of Virginia with regard to successive actions brought in different courts of that state, but we deal with another, dissimilar judicial system. By its nature this issue never has been and never will be resolved, or even considered, by any court of the Commonwealth of Virginia. Given the differences between the two judicial systems, no one can say with any assurance what Virginia's Supreme Court of Appeals would do if confronted with the question now before us in the context in which it arises.

Virginia's is a highly decentralized, relatively autonomous, system of independent trial courts of sometimes overlapping and duplicating jurisdiction with few administrative or procedural provisions for coordination of their effort or the performance of cooperative or complementary functions. In stark contrast, the federal system is "one great system for the administration of justice"[17] with a singularity and a unity which encourages and requires conformity in the functioning of each of the parts to the purposes and objectives of a highly cohesive whole.

The resolution of an essentially procedural issue in one judicial system will not necessarily apply with similar reason when the question comes up in the context of a very different system. The nature, history and traditions of a judicial system have an especially profound influence on the recognition given by one court within that system to earlier proceedings in another court within the system. Occurrences in a highly autonomous court need not always be noticed in another highly autonomous court; but in a unitary system the workings of each part must have their reflections in the whole.

The differences between the two systems would not be so significant had not commencement of the action in the Western District of Kentucky, the defendant's response and the conduct of pretrial proceedings there fully served all of the purposes underlying Virginia's adoption of its two year statute of limitation. Since those purposes have been satisfied, the institutional basis of Virginia's tolling rule becomes critical to a consideration of the applicability of that rule.

On an issue so closely procedural and so intimately involved in the nature and functioning of the federal judicial system, we believe that service of the integrity and needs of that institution should prevail over random guesses about essentially irrelevant state law stemming from different institutional considerations.

Sketches of the two judicial systems will disclose their great differences.

Virginia has a melange of basic trial courts.

Circuit courts are the usual trial courts of general jurisdiction. There is a circuit court for each county, which is also the circuit court of any city of more than 10,000 people within the boundaries of the county,[18] unless a separate circuit court for that city has been created. Twenty-one such cities now have a separate circuit court.[19]

The original jurisdiction of the circuit courts, except those of Richmond and Newport News, extends to all civil and

---

17. Internatio-Rotterdam, Inc. v. Thomsen, 4 Cir., 218 F.2d 514, 517.

18. Va.Code Ann. § 17–118.

19. Va.Code Ann. § 17–117.

criminal matters, except those triable initially in inferior courts, and except that they have no criminal jurisdiction if the crime was committed within the territorial limits of a city in which there is a corporation or hustings court.[20]

Fourteen of the larger cities have corporation or hustings courts.[21] The subject matter jurisdiction of these courts is generally the same as that exercised by circuit courts.[22] Some cities have a second corporation court of more restricted jurisdiction than the first.[23]

Below the circuit and corporation or hustings courts exist numerous inferior courts with limited, specialized jurisdiction, including county courts, municipal courts, courts of limited jurisdiction ("police courts"), and juvenile and domestic relations courts.[24]

The cities of Richmond, Norfolk, Roanoke, and Newport News have even a larger number of trial courts with varied jurisdiction. An abbreviated summary of the jurisdiction of the five basic trial courts sitting in Richmond may be illustrative. These are:

1. *The Law and Equity Court of Richmond* which has the same jurisdiction given to circuit and corporation courts, except as to matters of criminal jurisdiction, the probate and recordation of wills, and the appointment and qualification of fiduciaries;[25]

2. *The Chancery Court* which has jurisdiction of all suits and proceedings in chancery except those specially cognizable in the *Circuit Court of Richmond,* jurisdiction of all other matters, except matters of common law and criminal jurisdiction, within the jurisdiction of the Circuit Courts, and exclusive jurisdiction, within that part of the City of Richmond which lies north of the James River, over probate and registration matters and the appointment, qualification, and removal of fiduciaries;[26]

3. *The Circuit Court of Richmond* which has jurisdiction of criminal matters against convicts, and civil jurisdiction of claims against the state, of claims by the state for money owing, of claims by the state for fines levied upon certain officials and general civil jurisdiction over causes of actions arising within the Capitol Square;[27]

4. *The Hustings Court of Richmond* which has general criminal jurisdiction, except of proceedings against convicts (see *Circuit Court,* above), and civil jurisdiction in actions of forcible or unlawful entry or detainer, in condemnation proceedings and in proceedings to correct erroneous assessments;[28] and

5. *The Hustings Court of Richmond, Part Two* which has jurisdiction concurrent with the *Hustings Court,* except as to proceedings to correct assessments, jurisdiction concurrent with the *Law and Equity Court* of all common law cases, jurisdiction concurrent with the *Chancery Court* of proceedings in equity, and jurisdiction, within that part of Richmond which lies south of the James River (see *Chancery Court,* above) over probate and registration matters.[29]

Essentially, the scheme of the Virginia court system is one of multiple, separate trial courts with sometimes overlapping territorial and subject matter ju-

---

**20.** Va.Code Ann. § 17–123. The jurisdiction of the circuit courts of the larger cities is fixed by separate statutes. See, for example, the references below to the trial courts sitting in Richmond whose circuit court is one of very specialized jurisdiction.

**21.** The cities with corporation or hustings courts are set forth in § 17–135, Va.Code Ann. Most, but not all of these cities also have a separate circuit court. Corporation courts and hustings courts appear to differ in name only.

**22.** Va.Code Ann. § 17–139.

**23.** Va.Code Ann. § 17–140.

**24.** See generally Title 16.1, Va.Code Ann.

**25.** Va.Code Ann. § 17–164. Prior to 1954 there was also a Law and Equity Court, Part II.

**26.** Va.Code Ann. § 17–161.

**27.** Va.Code Ann. § 17–163.

**28.** Va.Code Ann. § 17–153.

**29.** Va.Code Ann. § 17–154.

risdiction. While there are provisions for the assignment of judges to equalize work loads and while some courts may have more than one judge, there is a strong tendency to give each trial judge his own court. Although the judgments of the various courts are reviewable by the Supreme Court of Appeals of Virginia, the system leaves each of the individual trial courts a marked independence and a special identity of its own.

The federal court system is more simply organized and places greater emphasis on the functioning of the system as a whole. There are some specialized courts, such as the Court of Claims, the Court of Customs and Patent Appeals and the Customs Court, having nationwide jurisdiction, but narrowly confined subject matter jurisdiction. There are subordinate and specialized courts in the District of Columbia and in the territories. The great burden of judicial work of the system, however, is conducted in the District Courts, courts of general jurisdiction encompassing almost the whole of federal jurisdiction itself. In each district there is but one District Court, and the boundaries of many districts coincide with those of whole states. There are only two District Courts in Virginia. Multiple judgeships are the rule, rather than the exception, and every judge of a District is authorized to preside over any proceeding within the court's jurisdiction.

For purposes of appellate review and administration, the several district courts are grouped in eleven judicial circuits. With the exception of the District of Columbia Circuit, the Circuits are all multi-district and multi-state. The judgments of the District Courts within each circuit are reviewable by a Court of Appeals of the Circuit, or, with respect to a limited number of proceedings which are thought to require expedition, directly by the Supreme Court of the United States. In addition, the Circuit Councils exercise substantial administrative control over the District Courts within the Circuit and their judges,[30] and the Chief Circuit Judge may assign judges anywhere in the Circuit if the work requires. With the consent of the Chief Justice and the Chief Circuit Judges concerned, such assignments may be made to other circuits.

In a developing sense, the boundaries of a district are not impenetrable walls strictly confining the power of a District Court. Even if the district encompasses only a part of a state, the process of the District Court reaches throughout the state. When additional parties need be brought in, its process may reach out a hundred miles, across district and state boundaries.[31] In interpleader actions, its process reaches throughout the nation.[32]

Relatively liberal provisions for the transfer of cases from district to district permit consolidations for trial[33] and evidence a cooperative functioning of the parts of the system. Recent developments in the handling of multi-district litigation arising out of such things as airline crashes and multitudinous anti-trust claims now permit the consolidation for pretrial processing of all such cases by one judge in one district under the general supervision of a

---

30. 28 U.S.C. § 332, 28 U.S.C. § 137. See the discussion by Mr. Justice Harlan, concurring in Chandler v. Judicial Council, 398 U.S. 74, 89, 90 S.Ct. 1648, 26 L.Ed.2d 100, of the important role played by the Circuit Judicial Councils in the management of judicial work in the Federal Court System.

31. Federal Rules of Civil Procedure, Rule 4(f).

32. 28 U.S.C. § 2361.

33. Rule 42(a) of the Federal Rules of Civil Procedure allows consolidation and joint trial of actions involving a common question of law or fact. Transfer of cases from one district to another for purposes of consolidation is possible under 28 U.S.C. § 1404(a) which permits transfer of any civil action for the convenience of the parties and witnesses, in the interest of justice. Cf. Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945.

special panel of judges.[34] Duplications and wasteful effort and expense are thus avoided in a system capable of functioning in a unitary manner.

A judgment obtained in one district court may be enforced in another, without formal proof of judgment, by filing a certified copy of the judgment in the district in which enforcement is sought. 28 U.S.C.A. § 1963.

The capacity of the federal courts to function cooperatively led Judge Parker, speaking for this court, to describe the system as "unified" and to approve the transfer of an action, timely filed in the Southern District of New York in the Second Circuit, but where the respondent ship had not been found, to the District of Maryland, where the ship could be attached, though the statute of limitations had run before the transfer.[35] In somewhat similar circumstances, the Supreme Court approved the transfer of a case from the Eastern District of Pennsylvania, where it had been filed but where the defendants could not be "found," to the Southern District of New York where the defendants could be "found."[36] That transfer was made pursuant to 28 U.S.C. § 1406(a),[37] one of several procedural provisions affording federal court litigants protection against "justice-defeating technicalities." [38]

The problem which confronted the Virginia Supreme Court of Appeals in Jones v. Morris Plan Bank of Portsmouth, *supra,* never should have arisen in the federal system. If Virginia's trial courts had been organized as the federal district courts are, if Virginia, as an essential part of that organization, had a statute comparable to 28 U.S.C. § 1406(a), the Circuit Court of the City of Suffolk would never have dismissed the action "for lack of proper venue duly pleaded," unless the action was patently frivolous or harassing and provided the filing of the action had served the basic purpose of the statute of limitation. In a more unitary system, it would have been transferred by the Circuit Court of the City of Suffolk to the Circuit Court of the City of Portsmouth, and there would not have been a plea of the statute's bar. If the circuit courts of the two cities had been as closely related as are district courts, with all of the mechanical means of promoting the closeness of that relationship, Mr. Jones would not have been remembered in procedural defeat.[39]

In the institutional context in which it arises, this case appears more like *Weinstein* than *Jones.* The institutional considerations emanating from a system of autonomous trial courts which dictated the result in *Jones* were absent in *Wein-*

---

34. 28 U.S.C. § 1407. See Peterson and McDermott, Multidistrict Litigation: New Forms of Judicial Administration, 56 A.B.A.J. 737.

35. Internatio-Rotterdam, Inc. v. Thomsen, 4 Cir., 218 F.2d 514. The transfer was held to be permitted under either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406 (a).

36. Goldlawr v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39.

37. 28 U.S.C. § 1406(a): The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

38. Internatio-Rotterdam, Inc. v. Thomsen, 4 Cir., 218 F.2d 514, 517. See also, for

example, 28 U.S.C. § 1406(c) authorizing the transfer from the District Court to the Court of Claims of cases filed in the former but within the exclusive jurisdiction of the latter.

39. Although Virginia has a removal statute, Va.Code Ann. § 8–157, which permits some transfers of cases from one court to another, a plaintiff who lays venue in the wrong court will have his case dismissed and not transferred. Woodhouse v. Burke & Herbert Bank, 166 Va. 706, 185 S.E. 876; see also Jones v. Morris Plan Bank of Portsmouth, 170 Va. 88, 195 S.E. 525. Similarly, a case filed in a court which lacks subject matter jurisdiction over the controversy cannot be transferred to the proper court. Valley Turnpike Co. v. Moore, 100 Va. 702, 42 S.E. 675. Compare 28 U.S.C. § 1406(c), cited in note 38, *supra.*

*stein,* where both actions were brought in the same court. It was unnecessary in Weinstein that a second action between the same parties dealing with the same subject matter be treated as entirely independent of the first. It is noteworthy, too, that *Weinstein* does not rely on Virginia's tolling statute for its holding. The tolling statute was just as inapplicable there as in *Jones.* The principal difference between the two cases appears to be that in *Jones,* unlike *Weinstein,* the second action was filed in a different and independent court, which was not required to notice the pendency of proceedings in the first court. In a system of integrally related, cooperating trial courts the result in *Weinstein* and its rationale appear naturally to encompass the *Jones* situation, at least when the second action is filed during the pendency of the first.

We do not attempt an appraisal of the comparative merits of the systems. To say that they are different implies no inferiority of either. Virginia's system has been developed in response to appraisals of her needs, while the federal system has grown responsively to the needs of a national system of courts. The federal system may be no more adaptable to Virginia's needs than Virginia's system would be to national needs. The point is that the resolution of a problem arising out of the nature of one system ought not to control, in a mechanistic way, the resolution of a somewhat similar problem when it comes up in the context of a very different system.

In deciding that the question of the recognition to be given by one federal court to proceedings in another federal court should be resolved as a matter of federal law, we do no violence to the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, which requires that federal courts in the diversity jurisdiction decide cases in accordance with state law, whether decisional or statutory. The contours of that requirement have been delineated with increasing clarity by subsequent cases which have made it plain that not every issue arising in a diversity case is governed by state law. *See, e. g.,* Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464; Byrd v. Blue Ridge Cooperative, 356 U.S. 525, 78 S.Ct. 893, 2 L. Ed.2d 953; Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8; Szantay v. Beech Aircraft Corp., 4 Cir., 349 F.2d 60.

The essence of our Federal system is the allocation of law-making functions between state and national authorities and the decision in *Erie* was, at least in part, a recognition of the fact that this fundamental governmental scheme is seriously undercut if the federal courts, in serving as a forum for the enforcement of state-created rights, formulate their own rules in areas which are properly matters of state, not federal, concern.[40]

The problem facing the federal courts since *Erie* has been to determine which questions arising in diversity litigation are matters of state concern which should be answered by reference to state law and which questions are matters of

---

**40.** 304 U.S. 64, 78–80, 58 S.Ct. 817; Bernhardt v. Polygraphic Co. of America, Inc., 350 U.S. 198, 202, 76 S.Ct. 273, 100 L.Ed. 199. See also, Hanna v. Plumer, 380 U.S. 460, 471–472, 85 S.Ct. 1136, 1144:

> "We are reminded by the Erie opinion that neither Congress nor the federal courts can, under the guise of formulating rules of decision for federal courts, fashion rules which are not supported by a grant of federal authority contained in Article I or some other section of the Constitution; in such areas state

law must govern because there can be no other law."

The extent to which the *Erie* doctrine is constitutionally compelled has been a subject of considerable debate, see the discussion and citations in Wright, Federal Courts, 2nd ed. § 56. Since we are dealing with an issue relating to the operation of the federal courts which the Constitution gives the federal government authority to resolve, see Hanna v. Plumer, 380 U.S. 460, 472, 85 S.Ct. 1136, that debate is academic for purposes of our decision in this case.

federal concern which can be answered by reference to federal law. *Erie* and its progeny may be seen as an attempt to formulate a workable doctrine governing choice of law in diversity actions which would prevent impermissible federal court interference with state rules reflecting policy considerations lying within the realm of state law-making competence. Guaranty Trust Co. v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079; Hanna v. Plumer, 380 U.S. 460, 474, 85 S.Ct. 1136 (concurring opinion of Mr. Justice Harlan).

The *Erie* doctrine clearly leaves for determination by the states questions concerning the definition of the basic state-created cause of action, with the federal courts being required to take a position of substantive neutrality. But legal rights are not self-executing, and they can not be viewed in total isolation from the rules governing their judicial enforcement.

It is, of course, neither possible nor necessary for federal courts to be totally neutral in the adjudication of state-created rights. It is not possible simply because federal courts are not protean and are unable to transform themselves into exact replicas of their state counterparts.[41] That state and federal judicial systems are not identic will inevitably mean that the choice of forum will have some effect upon the course of litigation. Some adoption of state court procedures by federal courts sitting in diversity may be feasible, but it may also be in conflict with fundamental interests of the federal courts in the conduct of their own business and the maintenance of the integrity of their own procedures, the legitimate interests of a federal forum, *qua* forum.

■ Literal application of some of the language in Guaranty Trust Co. v. York, *supra,* might appear to compel the conclusion that a federal court must apply state law in every case where failure to do so might make a difference in the outcome of the litigation. The language of that opinion, however, has been moderated.[42] Now, in the choice between state and federal law in the disposition of procedural problems such as the one before us, we properly take account of federal interests and the effective functioning of the federal courts as a cohesive, relatively unitary, system for the administration of justice.

In Szantay v. Beech Aircraft Corp., *supra,* we described the analysis to be undertaken by a federal court attempting to resolve a federal-state conflict in a diversity case as follows:

"1. If the state provision, whether legislatively adopted or judicially declared, is the substantive right or obligation at issue, it is constitutionally controlling.

2. If the state provision is a procedure intimately bound up with the state right or obligation, it is likewise constitutionally controlling.

3. If the state procedural provision is not intimately bound up with the right being enforced but its application would substantially affect the outcome of the litigation, the federal diversity court must still apply it unless there are affirmative countervailing federal considerations. This is not deemed a constitutional requirement but one dictated by comity."[43]

In order to determine whether Virginia's tolling rule is "intimately bound up with the right being enforced," it would be helpful to know with certainty the state policies underlying the tolling rule. Unfortunately, as in *Szantay,* there is an absence of evidence from state sources shedding any light on the problem. As pointed out above, however, we think it is clear that to the extent that the pur-

---

41. Guaranty Trust Co. v. York, 326 U.S. 99, 108–109, 65 S.Ct. 1464; Cohen v. Beneficial Loan Corp., 337 U.S. 541, 555–556, 69 S.Ct. 1221, 93 L.Ed. 1528.

42. Byrd v. Blue Ridge Cooperative, 356 U.S. 525, 78 S.Ct. 893; Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136.

43. 349 F.2d 60, 63–64.

poses of the statute of limitation have been satisfied and the plaintiff has been without fault in not prosecuting his claim to a final judgment, the rule reflects essentially institutional considerations relevant to the administration of justice within the Virginia court system which are unrelated to the basic rights and obligations of the parties. The presence of other considerations is unapparent, while *Weinstein,* treating successive actions in the same court as one, emphasizes the institutional nature of the tolling rule of *Jones,* in which no effect was attributed to the pendency of an earlier action in a different Virginia trial court. In the context of this case, where the only relevant considerations are institutional, Virginia's tolling rule cannot be said to be "intimately bound up with the right being enforced."

That there is a significant federal concern for the application of rules of litigation in federal courts which are consistent with the fundamental nature of that court system is well established. *See, e. g.,* Byrd v. Blue Ridge Cooperative, *supra;* Herron v. Southern Pacific Co., 283 U.S. 91, 94, 51 S.Ct. 383, 75 L. Ed. 857.

Insofar as federal concerns are involved, this action is, in effect, merely a continuation of the proceedings commenced in the Western District of Kentucky.[44] This is clear from the unitary nature of the federal court system and the procedures it embodies for the expeditious adjudication of cases on their merits.

Whether the Kentucky action could have been transferred to the Western District of Virginia under 28 U.S.C. § 1404 is a matter of federal law.[45] If this action had initially laid venue in the wrong district, its transferability under 28 U.S.C. § 1406(a), after the running of any applicable statute of limitation, would be determined as a matter of federal law.[46] Implicit in a decision that there should be a transfer after the lapse of two years following the injury is a determination that the basic purpose of the applicable statute of limitation has been satisfied and that the interests of justice dictate against dismissal.[47]

Though here there was no transfer of the action in the Western District of Kentucky and the question of its transferability was not raised, the commencement of this action in the Western District of Virginia during the pendency of the Kentucky action has achieved the same practical result. A determination of the tolling effect of the commencement and prosecution of the federal action in the Western District of Kentucky ought to be had under the same body of law regardless of the procedural means by which prosecution of the substantive

44. See Adams v. Collier, 122 U.S. 382, 7 S.Ct. 1208, 30 L.Ed. 1207, holding that a suit instituted in the Circuit Court [under the pre-1911 judicial system] after withdrawal of a prior suit on the same cause of action in the District Court was, for statute of limitation purposes, "in effect, a continuation of the former" suit. That the second action is a continuation of the first is precisely the rationale on which the Supreme Court of Appeals of Virginia relied in holding the reformation suit timely in *Weinstein.*

45. Compare Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055, a diversity case in which the Supreme Court declined to decide whether a pre-§ 1404 *forum non conveniens* transfer was governed by state or federal law, *with* Sullivan v. Behimer, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254, a diversity case in which the Supreme Court treated a transfer pursuant to § 1404 entirely as a matter of federal statutory interpretation. *See also,* Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L. Ed.2d 945; Internatio-Rotterdam, Inc. v. Thomsen, 4 Cir., 218 F.2d 514.

46. Cf. Goldlawr v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39.

47. "When a lawsuit is filed, that filing shows a desire on the part of the plaintiff to begin his case and thereby toll whatever statutes of limitation would otherwise apply. The filing itself shows the proper diligence on the part of the plaintiff which such statutes of limitation were intended to insure." Goldlawr v. Heiman, 369 U.S. 463, 467, 82 S.Ct. 913, 916.

cause of action is discontinued in the district court sitting in Kentucky and continued in a district court sitting in Virginia.

Since Virginia's tolling statute and state decisions construing it have been so largely influenced by the nature and the structure of Virginia's system of trial courts, since the question here arises out of a different system and reasonable answers are dependent upon the nature and the structure of that system and its effective functioning, we conclude that we must seek the answer as a matter of federal, not state, law. Since every purpose of Virginia's proscription against the commencement of tort actions more than two years after the injury has been served, we conclude that, as a matter of federal law, the statute has been satisfied.[48]

The judgment is reversed and the case remanded with instructions to overrule the plea of the statutory bar.

Reversed and remanded.

WINTER, Circuit Judge (specially concurring):

I concur in the judgment of the Court because I think that state law requires reversal and remand. We need not and should not decide more.

Following plaintiff's petition for further reconsideration, counsel have referred us to Weinstein v. Glens Falls Insurance Co., 202 Va. 722, 119 S.E.2d 497 (1961), decided after Jones v. Morris Plan Bank of Portsmouth, 170 Va. 88, 195 S.E. 525 (1938), on which we relied for affirmance in our original decision. In *Weinstein* an action at law on a policy of insurance was commenced within the one year period of limitations for actions at law or in equity specified in the policy. The contractual period of limitations was required to be included in the policy by Virginia statute. Neither the statute nor the contract contained any provision for its tolling. During the course of the litigation, it became apparent that the court in which the action had been instituted was not competent to grant relief. To warrant recovery, reformation of the contract, an action cognizable solely in an equity court in Virginia, would be required. An action in equity was then instituted. It was filed before final disposition of the action at law but more than one year after the loss occurred. When the insurer contended that the equitable action was barred by limitations, the Virginia Supreme Court of Appeals rejected the contention. It ruled that "the chancery suit was but a continuation of the claim asserted in the law action which was concededly brought in time, and the statute having stopped running upon the institution of the law action, the suit in chancery was not barred." 119 S.E.2d at 503.

To me, *Weinstein* is dispositive of this appeal. Plaintiff's suit was instituted in Kentucky before the expiration of

48. It is suggested in the concurring opinion that any consideration favoring the application of a federal tolling rule would equally favor the application of a federal statute of limitation. Whether or not Congress could validly enact such a statute for diversity cases, it has not done so. We need not resurrect the indefinite, cumbersome doctrine of laches as the only limitation on the commencement of actions in the diversity jurisdiction. State statutes provide a convenient, predictable period of limitation for use in the diversity jurisdiction, and resort to them minimizes the disparity of results of litigation in state and federal courts. If *Guaranty Trust* has no constitutional foundation, as long as there is no federal statute of limitation, its result would be dictated by institutional considerations.

In the federal system, the tolling effect of an earlier action in a federal court is a very different question than the one resolved in *Guaranty Trust*. Adoption of a state's statutory period of limitation is not inconsistent with our conclusion that recognition in a federal court of earlier proceedings in another federal court should be determined as a matter of federal law.

We accept and apply *Guaranty Trust*, but we do not extend it to require federal adoption of a state tolling rule, born of state court institutional considerations which have no relevance in the context of the federal system.

two years prescribed by the applicable Virginia statute. The Kentucky court, bound by Kentucky's *ex post facto* determination that Kentucky public policy prohibited giving effect to foreign statutes of limitations more liberal than that of Kentucky, was not competent to consider the merits of the suit. Plaintiff's suit in Virginia was instituted before the Kentucky action was terminated. Indeed, suit was filed in the Western District of Virginia before the mandate of the United States Court of Appeals for the Sixth Circuit issued and more than six months before the Supreme Court denied certiorari. See Burnett v. New York Cent. R. Co., 380 U.S. 424, 435, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). I have no difficulty in concluding that the Virginia suit was "but a continuation" of the previously filed Kentucky action, timely under Virginia law, and, therefore, the Virginia statute of limitations interposed no bar.

Inexplicably, the opinion in *Weinstein* made no reference to the earlier decision in *Jones*. We are told, also, that no reference to *Jones* was made in the briefs filed in *Weinstein*. Whatever our views with regard to conflict between the two decisions, *Weinstein*, as the latest expression of Virginia law, is entitled to be followed. Reconciliation, if any is needed, is for the state courts in an appropriate case, not us.

We ought not to decide more than that the present suit is not barred by limitations under Virginia law. The parties have agreed that, under Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), we must look to the law of Virginia to decide this case. *Guaranty Trust* held that, in a diversity action like that at bar, we must look to the state law to determine the period of limitations. The court purportedly accepts this proposition, but seeks to avoid its logical consequences by finding that the *tolling* of limitations is a matter of federal law. While *Guaranty Trust* did not concern the *tolling* of limitations, tolling is so clearly the obverse of the same coin that I think we

are bound to Virginia law and are foreclosed from fashioning a federal rule.

Certainly, *Guaranty Trust* has not been sufficiently eroded in whole or in part that we should refuse to follow it; nor, in my estimation, has a satisfactory way been devised by the court to avoid it. The decisions of the Supreme Court in Byrd v. Blue Ridge Cooperative, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), and Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), do provide a basis for applying a federal rule of law in a diversity case under certain circumstances, but the rationale of those two cases does not support a further departure from the principles of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), under the facts presented here. *Byrd* (factual issue must be decided by a jury in a federal court) and *Hanna* (service of process in federal actions must meet the standards of the Federal Rules of Civil Procedure) were dictated by strong expressions of federal policy: the Seventh Amendment and the Federal Rules of Civil Procedure, respectively. In contrast to these Constitutional and Congressional mandates, here we have only a notion of an "institutional interest" in the uniform management of the federal court system. If this interest is sufficient to support a federal rule of tolling, I suggest that it favors the application of a federal statute of limitations just as strongly, so that by implication *Guaranty Trust* is being overruled. I note, also, that there is lacking in this case any discriminatory state policy of the type intended to be prevented by the creation of federal diversity jurisdiction so that there would be justification for noncompliance with state law. Szantay v. Beech Aircraft Corp., 349 F.2d 60 (4 Cir. 1965).

To me, it is, therefore, unwise to impugn the vitality and scope of *Guaranty Trust* when the law of Virginia alone provides the result.

Circuit Judge SOBELOFF authorizes me to say that he joins in this opinion.