**Leo SASSO et al.**

v.

**John KOEHLER.**

**Civ. No. Y–77–1060.**

United States District Court, D. Maryland.

Jan. 24, 1978.

Jeffrey M. Axelson, College Park, Md., Robert F. Wood, Rochester, N. Y., for plaintiffs.

John H. Mudd, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge.

Plaintiffs, Leo Sasso and Daniel Jordan, are the former sole owners of Milcom Products, Inc. (hereinafter Milcom), which was sold to Transitron Electronic Corporation (hereinafter Transitron), pursuant to an Agreement and Plan of Reorganization dated February 6, 1968. Defendant, John Koehler, is a former director of Transitron, and an attorney who represented Transitron, as a successor to Milcom, in two Renegotiation cases under the Renegotiation Act of 1951, as amended, before the Renegotiation Board and the Court of Claims from 1968 until April 24, 1974, when final settlement was approved and judgment entered. In a nine-count complaint, alleging diversity of citizenship, plaintiffs charge defendant as follows: Count I, common law fraud arising out of the 1968 acquisition negotiations; Count II, violation of the Securities Act of 1933 in connection with the acquisition negotiations; Count III, violation of the Securities Exchange Act of 1934 in connection with the same negotiations; Count IV, common law fraud and conspiracy in representing Transitron in Renegotiation Act matters; Count V, tortious interference with the 1968 agreement; Count VI, conspiracy with respect to Counts IV and V; Count VII, fraudulent filing of a counterclaim by Transitron in a 1972 lawsuit[1]; Count IX, negligence and malpractice in the Renegotiation Act matters; Count X, breach of fiduciary duty in Renegotiation Act representation.

The parties agree that all of the above claims have been previously asserted against the defendant in actions brought against him and others in the United States District Court for the Western District of New York. Counts I, II and III were asserted in an action commenced on or about January, 1972, *Leo Sasso and Daniel Jordan v. Transitron Electronic Corporation, et al., Civil Action No. 1972–215*; Counts IV through X were asserted in a similarly captioned claim, *Civil Action No. 76–62*, filed in or about February, 1976. Both of these claims were dismissed as to defendant John Koehler on the grounds of lack of jurisdiction, improper venue and lack of personal service of process.

Presently before the Court is defendant's motion to dismiss the complaint for failure to allege the diversity of citizenship needed for jurisdiction, to dismiss or enter summary judgment in his favor because the claims are barred by the applicable statutes of limitations, to dismiss for failure to state a claim upon which relief can be granted, and, in the alternative, to require plaintiffs to furnish a more definite statement of their claims.

Defendant's motion will be granted as to Counts I, II and III, but denied as to Counts IV—X.

## JURISDICTION

The complaint alleges that the plaintiffs reside in Florida and New York and that the defendant resides in Maryland. Since jurisdiction depends on citizenship, not mere residence, jurisdiction of this Court is not sufficiently asserted. 5 Wright & Miller, *Federal Practice & Procedure*, § 1208, p. 85, n.6, citing numerous cases. See *O'Shea v. Binswanger*, 42 F.R.D. 21, 24 (D.Md.1967). However, in the Memorandum in Opposition to the Defendant's Mo-

---

1. The complaint has counts up to the number X, but there is no Count VIII; therefore, there is a total of nine counts.

tion to Dismiss, it is alleged that the parties are also domiciliaries and citizens of the aforementioned different states. Assuming that plaintiffs can amend their complaint to state jurisdiction, their claims are properly before this Court.

## LIMITATIONS

### COUNT I

In diversity cases, federal courts will decide cases in accordance with state law, both decisional and statutory. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). A claim is not timely filed in federal court if a state statute of limitations would have barred recovery had the suit been brought in a state court. *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

In the instant case, the time period within which plaintiffs must bring an action for common law fraud is governed by Maryland Code Annotated, Courts and Judicial Proceedings Article, § 5–101, which prescribes a three-year limitation period from the date the action accrues.

Plaintiffs state that this claim for fraud accrued on or about July, 1971. Although this allegation is disputed by defendant, the disagreement is not material to a resolution of the limitations issue. Even accepting the July, 1971 date, Count I is barred by the Maryland statute of limitations, unless the pendency of the same claim against the defendant in the 1972 action brought in the Western District of New York interrupted or "tolled" the running of limitations.

As a general rule, when a state statute of limitations governs a claim, state law also governs other aspects of limitations, such as tolling. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). There plaintiff contended that, although the limitations period for bringing civil rights actions pursuant to 42 U.S.C. § 1981 is bottomed on state law, federal law should govern tolling. The Court rejected this contention, stating:

Any period of limitation . . . is understood fully only in the context of the various circumstances that suspend it from running against a particular cause of action. Although any statute of limitations is necessarily arbitrary, the length of the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones. In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application. In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the state's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim.

*Id.* at 463–64, 95 S.Ct. at 1722.

As the above quote indicates, the *Johnson* case involved a federal cause of action, where state law was borrowed, rather than a diversity case. Based upon the *Erie* doctrine, the argument to apply all aspects of state statutory and decisional law to resolve a limitations issue is even stronger in a diversity case.

An analysis of Maryland law leads to the conclusion that plaintiffs' prior claim did not interrupt the running of limitations.

In *Bertonazzi v. Hillman, Adm'x.,* 241 Md. 361, 216 A.2d 723 (1966), the Maryland Court of Appeals held that the filing of an action against the personal representative of a deceased tortfeasor in Baltimore County, where neither the decedent nor the administratrix resided, tolled the relevant limitations period until the dismissal for improper venue. Plaintiff's attorney had brought suit in the County, rather than Baltimore City, after erroneously concluding from a map that the decedent's home was in the County. The Court stressed the fact that transfer statutes or "saving" statutes protect plaintiffs from adverse consequences due to limitations statutes when they have selected an improper venue.

Emphasizing the fact that Baltimore County had jurisdiction of the parties and the subject matter and that the case would have been tried there but for the venue issue, the Court concluded that the purposes of the limitations statute, to insure prompt assertion of a claim and formal notice to a personal representative, were as fully satisfied by the suit filed in the County as they would have been by a suit properly filed in the City. In light of all these factors, the Court held that the statute was tolled, despite the lack of a statutory provision providing for tolling in such circumstances.

In *Walko Corporation v. Burger Chef Systems, Inc.*, 281 Md. 207, 378 A.2d 1100 (1977), the *Bertonazzi* case was narrowly construed. Responding to a Certification of Question of Law from the United States Court of Appeals for the District of Columbia, the Maryland Court held that § 5–101 was not tolled during Walko's motion to intervene, ultimately denied, in a prior civil action. The Court specifically refused to read *Bertonazzi* as authority for the proposition that timely filed, but procedurally defective actions, stop the running of limitations. Strongly emphasizing a policy of strict construction for limitations statutes, the court stated:

> This venerable rule, which defers to the legislative intent expressed in the statute of limitations itself, and avoids implied exceptions or strained constructions, is also applicable in cases such as the one at bar where an action filed initially within the required period fails for some technical, procedural defect falling short of a full decision on the merits. Absent a statutory provision saving the plaintiff's rights, the remedy is barred where limitations has run during the pendency of the defective suit.

281 Md. at 211–12, 378 A.2d at 1102. The court went on to speak of *Bertonazzi* as:

> . . . a narrow exception to the traditional rule against engrafting implied exceptions upon the statute of limitations in certain situations where the <u>sole</u> reason for the dismissal of the prior action was improper venue. (Underlining added.)

*Id.* at 214, 378 A.2d at 1103. The fact that the other parties arguably had some notice of Walko's claim by reason of the motion to intervene was held insufficient reason to excuse compliance with the statute. The court held that it would be wrong to allow tolling by procedurally defective claims, later dismissed, since the running of limitations would thereby be indefinitely postponed.

In the instant case, plaintiff's prior claim against defendant was dismissed not only for improper venue, but, more basically, for lack of jurisdiction and failure to serve process. Accordingly, the narrow *Bertonazzi* exception to the running of limitations does not apply. Applying Maryland law, the claim in Count I is not timely filed.

Relying on *Atkins v. Schmutz Manufacturing Co.*, 435 F.2d 527 (4th Cir. 1970), *cert. denied*, 402 U.S. 932, 91 S.Ct. 1526, 28 L.Ed.2d 867 (1971), plaintiffs argue that the tolling effect of the filing of an identical suit in another federal court should be decided as a matter of federal, rather than state, law. Analysis of *Atkins*, however, leads to the conclusion that the circumstances which controlled the holding are not the same as those in the instant case, and should not govern its resolution.

Since *Erie*, federal courts in diversity litigation must decide when matters are of state concern which should be dealt with by state law, and when they are federal concerns which should be governed by federal law. *Atkins, supra*, at 535–36.

The applicable standard for resolving such federal-state conflicts has been stated in *Szantay v. Beech Aircraft Corporation*, 349 F.2d 60 (4th Cir. 1965). When state provisions are the very rights at issue, or intimately bound up with them, they are constitutionally controlling. Even when state provisions are less crucial, federal courts will still follow them in diversity cases, as a matter of comity, unless there are "affirmative countervailing federal considerations." *Id.* at 64.

In *Atkins*, the first action was brought in a United States Court for the Western Dis-

trict of Kentucky. While that case was still pending, a second identical action was brought in the Western District of Virginia. When the Kentucky action was dismissed after the bringing of the second action, defendant claimed the second action was barred by limitations. In this context, the Court stated:

> We conclude that the tolling effect of the pendency of an identical suit in another federal court is to be determined as a matter of federal, rather than state, law and that the Virginia statute of limitations was tolled by the action brought by Atkins in the Western District of Kentucky.

435 F.2d at 527–28. The court reasoned that if the plaintiff had sought to transfer the original claim, rather than filing a second claim, the viability of suit in Virginia would have been determined as a matter of federal law. The court then concluded that:

> . . . A determination of the tolling effect of the commencement and prosecution of the federal action in the Western District of Kentucky ought to be had under the same body of law regardless of the procedural means by which prosecution of the substantive cause of action is discontinued in the district court sitting in Kentucky and continued in a district court sitting in Virginia.

> Since Virginia's tolling statute and state decisions construing it have been so largely influenced by the nature and structure of Virginia's system of trial courts, since the question here arises out of a different system and reasonable answers are dependent upon the nature and structure of that system and its effective functioning, we conclude that we must seek the answer as a matter of federal, not state, law.

435 F.2d at 537–38. In *Atkins*, the court emphasized that the original court had jurisdiction and that the parties had been constant adversaries. The above quoted sections indicate that the court found "affirmative countervailing federal considerations" in the need to achieve uniform results when cases go from one federal court to another by different means.

These considerations are not present in the instant case. The prior action was concluded before the present one was brought. The Western District of New York did not have jurisdiction. The position of the parties as adversaries is interrupted, rather than continuous. No undesirable lack of uniformity in the results of moving cases about the federal system in one way rather than another is threatened in this case if state law is followed.

The situation in the present case is more appropriately described by the reasoning of *Walko Corp. v. Burger Chef Systems, Inc.*, 554 F.2d 1165 (D.C.Cir.1977), than by *Atkins*. There the court stated:

> . . . suspension of a state statute of limitations on a nonfederal claim by reason of the pendency of other proceedings has only the remotest effect on federal judicial administration. Federal judges need shoulder no new burdens, nor will the normal fact-finding processes of the federal courts be constrained in any way. Adherence to state law in this regard will affect the efficiency of the federal system only insofar as it dictates that a case not time-barred under state rules be heard in a federal court. 554 F.2d at 1172.

In summary, all limitations issues, including tolling, are decided with reference to state law in the vast majority of diversity cases. Only exceptional circumstances create a substantial federal interest in determining tolling by federal law. Such circumstances are not present here. Accordingly, Maryland law governs, and Count I must be dismissed, since it is barred by the Maryland statute of limitations.

## COUNT II

Plaintiffs allege that the fraudulent misrepresentations in acquisition negotiation, which are the basis of Count I, also constitute a violation of the Securities Act of 1933, 15 U.S.C. §§ 77e(a), (b), (c), 77*l*(1), (2), 77q(a)(1), (2), (3), 77*o*. Accepting the date given by plaintiffs, the cause of action accrued in July, 1971.

■ The time period for bringing an action under § 77*l*, and therefore under § 77*o*, is governed by § 77m which, in pertinent part, provides that an action must be brought within one year "after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence . . .". There can be no action under § 77*l*(1) "unless brought within one year after the violation upon which it is based." An action under § 77e for use of the mails or interstate commerce in the sale of an unregistered security must be brought within one year after the occurrence on which it is based, and, in no event more than three years after the sale of the unregistered security. *Moerman v. Zipco, Inc.*, 302 F.Supp. 439 (E.D.N.Y.1969); *affirmed*, 422 F.2d 871 (2nd Cir. 1970); *decision adhered to*, 430 F.2d 362 (2nd Cir. 1970).

■ For alleged violations of § 77q, which lacks a statute of limitations, federal courts apply the most analogous state law. *E. g., Dack v. Shanman*, 227 F.Supp. 26 (S.D.N.Y.1964); *Friedlander v. Feinberg*, 369 F.Supp. 917 (S.D.N.Y.1974), *affirmed*, 508 F.2d 836 (2nd Cir. 1975); *Newman v. Prior*, 518 F.2d 97 (4th Cir. 1975).

The analogous Maryland statue would appear to be Maryland Code Annotated, Corporations and Associations Article, § 11–703(f).[2] Under that section, actions must be brought "within one year after the discovery of the untrue statement or omission, or after the discovery should have been made by the exercise of reasonable diligence."

■ Under all the relevant periods, actions for alleged violations of the Securities Act of 1933 are plainly time-barred. For the reasons stated in discussing Count I, the 1972 action in the federal court in New York, which included this claim, did not toll the running of limitations. Further, the Securities Act contains no provision providing for tolling in such circumstances. Accordingly, Count II must be dismissed.

## COUNT III

■ The allegations of the previous Counts are repeated and stated to constitute a violation of Section 10 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j and Rule 10(b)(5) of the Securities and Exchange Commission. State statutes of limitations govern the timeliness of suit, since no federal statute of limitations is provided for violation of the above section and rule. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, Footnote 6, p. 191, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Fox v. Kane-Miller Corporation*, 542 F.2d 915, 917–18 (4th Cir. 1976). The last cited case establishes that the analogous Maryland statute is Maryland Code Annotated, Corporations and Associations Article, § 11–703(f)(2), which contains a one-year limitation. (See Count II analysis for fuller statement of this statutory section.)

Although this claim was previously asserted in the 1972 action, the limitations period is not extended, for reasons already given. Accordingly, Count III must be dismissed.

## COUNTS IV—X

■ Defendant's alleged misconduct in handling renegotiation actions is the basis for these Counts. All are governed by Md. Code Ann. Court and Judicial Proceedings Article § 5–101 whereby civil actions must be filed within three years from the date when they accrue. The time of accrual is the time when the wrong was committed, not the time of its discovery. *Atwell v. Retail Credit Co.*, 431 F.2d 1008 (4th Cir. 1970); *Watson v. Dorsey*, 265 Md. 509, 290 A.2d 530 (1972).

■ Defendant's activities in renegotiation ended by April 24, 1974 when final judgment was obtained in the Court of Claims. Therefore, this is the latest date when the wrong was committed. Since the present action was not filed until July 1, 1977, it is not timely, unless some circumstances extends the limitations period. For

---

**2.** No other possible relevant statute of limitations will change the result in this case.

reasons already given, the filing of these charges in New York in an action dismissed as to defendant for lack of jurisdiction, service of process and improper venue, is not such a circumstance.

 Fraudulent conduct by a defendant, which prevents earlier discovery, is a condition which may extend limitations. Under Md.Code Ann. Courts and Judicial Proceedings § 5–203:

If a party is kept in ignorance of a cause of action by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud.

For professional malpractice, Maryland has also established a "discovery rule", whereby the cause of action accrues when the wrong is discovered, or when, with due diligence, it should have been discovered. *Watson v. Dorsey*, 265 Md. 509, 290 A.2d 530 (1972); *Leonhart v. Atkinson*, 265 Md. 219, 289 A.2d 1 (1972).

 Plaintiffs contend that defendant's wrongful conduct in renegotiation matters was undiscoverable with the exercise of due diligence until January, 1976 when information became available through discovery in the New York case. Plaintiffs further contend that defendant deliberately acted to deceive them and keep information from them. If Counts IV—X did not accrue until January, 1976, they are not barred by limitations.

Defendant argues that plaintiffs were not kept in ignorance of their claims, and would have uncovered them at a much earlier date with the use of due diligence.

Since the date when the claims accrued is in dispute, Counts IV—X cannot be dismissed as untimely.

If the defendant's motion with its supporting affidavit is treated as a motion for summary judgment, pursuant to Rule 12(c) F.R.Civ.P., the dispute of fact similarly precludes a summary judgment for defendant. Defendant argues that the long history of litigation and the plaintiffs' own allegations in the complaint that they were dissatisfied with the handling of renegotiations years earlier prove that the claims accrued earlier. Defendant's point is well taken. Plaintiffs may face a difficult burden in demonstrating that the claims did not accrue until January, 1976. However, the documents filed in this case do not contain sufficient facts to resolve the issue at this time. Plaintiffs will be given an opportunity to prove that the claims contained in Counts IV—X are timely filed.

Consideration of the sufficiency of these claims in other respects will be deferred until the limitations issue is resolved.

Accordingly, it is this 24th day of January, 1978, by the United States District Court for the District of Maryland, ORDERED:

1. That the defendant's motion to dismiss Counts I, II and III as untimely be, and the same is, hereby GRANTED;

2. That the defendant's motion to dismiss Counts IV—X be, and the same is, hereby DENIED without prejudice to be renewed if indicated by plaintiff's responsive filing;

3. That the plaintiffs, be and they are, hereby ORDERED to file supporting affidavits within twenty (20) days of this Order to state affirmatively that the claims in Counts IV—X did not accrue until January, 1976. Failure to file said affidavits or supporting evidence will be deemed as an admission by plaintiffs that the alleged wrong was committed prior to April 24, 1974; and

4. That the plaintiffs be, and they are, hereby ORDERED to file an amended complaint alleging jurisdiction within twenty (20) days.